*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TRUAX, Minors.

UNPUBLISHED
November 21, 2023

Nos. 363835; 364747
Livingston Circuit Court
Family Division
LC No. 2021-016233-NA

Before: HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father appeals as of right the trial court's order of adjudication whereby it exercised jurisdiction over his two minor children, AT and RT, and its later order terminating his parental rights to the children at the initial dispositional hearing under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), and (k)(*ix*). We affirm the order of adjudication and affirm the trial court's findings that there were aggravated circumstances to excuse reunification services and that statutory grounds for termination were established by clear and convincing evidence, but vacate the trial court's best-interest determination and remand for further consideration of the children's best interests.

Respondent and his former live-together partner, S. Houpt, are the parents of the two minor children at issue, AT and RT. Houpt has two older children from prior relationships, SH and ZB. This case was initiated after SH disclosed in January 2021 that respondent sexually abused her for several years, beginning when she was seven years old. SH described ongoing abuse that began with acts of sexual contact, but progressed to acts of digital and penile vaginal penetration, anal penetration, and oral penetration. According to SH, the abuse occurred while the family lived in Brighton, Novi, Howell, and Stockbridge. The abuse stopped when Houpt ceased living with respondent in 2020, when SH was 14 years old. SH stated that the abuse occurred when Houpt was not home, but some of the incidents occurred while AT, RT, and ZB were home. Respondent denied sexually abusing SH and suggested that she was fabricating the allegations at Houpt's request because respondent intended to seek custody of AT and RT.

On January 28, 2021, petitioner, the Department of Health and Human Services (DHHS), filed a petition requesting jurisdiction over AT and RT, and requesting termination of respondent's parental rights at initial disposition. After the petition was filed, respondent was arrested and

-1-

charged in Livingston County with multiple counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a), and second-degree criminal sexual conduct, MCL 750.520c(1)(a), related to the abuse of SH. The adjudication trial was delayed at respondent's request pending resolution of his criminal charges, but the trial was ultimately was held in September 2022, while the criminal charges were still pending. Following a bench trial, which primarily focused on the allegations of respondent's sexual abuse of SH, the trial court found that a preponderance of the evidence supported exercising jurisdiction over AT and RT under MCL 712A.2(b)(1) and (2). Respondent appeals that decision in Docket No. 363835.

Following additional proceedings, in January 2023, the trial court found that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*i*), and (k)(*ii*), and that a preponderance of the evidence established that termination of respondent's parental rights was in the children's best interests. Respondent appeals this latter decision in Docket No. 364747. This Court consolidated the two appeals.[1]

## I. JURISDICTION

Respondent first argues that the trial court erred by finding that a preponderance of the evidence established grounds for jurisdiction under MCL 712A.2(b)(1) and (2). Although we agree that the evidence did not support jurisdiction under MCL 712A.2(b)(1), the trial court did not clearly err by finding that the evidence supported jurisdiction under MCL 712A.2(b)(2).

To properly exercise jurisdiction, the trial court must find that a statutory basis for jurisdiction exists. *In re PAP*, 247 Mich App 148, 152-153; 640 NW2d 880 (2001). "Jurisdiction must be established by a preponderance of the evidence." *In re BZ*, 264 Mich App 286, 295; 690 NW2d 505 (2004). This Court reviews the trial court's findings of fact for clear error. *In re Leach*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 362618; 362621); slip op at 2. Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at ___; slip op at 2. The trial court's application of its findings to a statute is reviewed de novo as a question of law. *Id*. at ___; slip op at 2.

"Child protective proceedings are initiated when a petition is filed in the trial court that contains facts constituting an offense against a child under MCL 712A.2(b) of the juvenile code, MCL 712A.1 *et seq*." *Id*. at ___; slip op at 3 (quotation marks and citation omitted). "In order to find that a child comes within the court's jurisdiction, at least one statutory ground for jurisdiction contained in MCL 712A.2(b) must be proven, either at trial or by plea." *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008). "If a trial is held regarding adjudication, the respondent is entitled to a determination by the jury or judge, the rules of evidence apply, and jurisdiction must be established by a preponderance of the evidence." *In re Mota*, 334 Mich App 300, 312-313; 964 NW2d 881 (2020).

---

[1] *In re Truax*, unpublished order of the Court of Appeals, entered February 10, 2023 (Docket Nos. 363835; 364747).

The trial court found that grounds for jurisdiction were established under MCL 712A.2(b)(1) and (2), which provide:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

Respondent argues that the trial court erred by finding that grounds for jurisdiction were established where, at the time the petition was filed, he was incarcerated, had a high bond, and was subject to a no-contact order that prohibited him from having contact with the children. In addition, the children were living separately with their mother. Therefore, respondent argues, he did not pose a risk of harm to the children and the children's home was not unfit because of him. Respondent also argues that because he is AT's and RT's legal father through an affidavit of parentage, Houpt has legal and physical custody of AT and RT under MCL 722.1006 (when a mother and father sign an acknowledgment of parentage, the mother has initial custody).

Recently, in *In re Leach*, ___ Mich App at ___; slip op at 1, this Court considered an appeal by the DHHS of a trial court's refusal to authorize a petition requesting that the trial court exercise jurisdiction over the respondent-father's two children, JSL and AL, and terminate the respondent-father's parental rights. The case arose out of allegations that the respondent-father had violently shaken JSL, causing JSL to suffer a bilateral brain bleed, multiple rib fractures, and retinal hemorrhaging, which placed JSL in the hospital for two weeks. *Id*. at ___; slip op at 1. The respondent-father was charged with one count of first-degree child abuse and incarcerated with a bond set at $200,000. *Id*. at ___; slip op at 1-2. The minor children remained with their mother, who had sole legal and physical custody of the children. *Id*. at ___; slip op at 2. It was also determined and undisputed that the mother's home was safe. *Id*. at ___; slip op at 2. The trial court denied the DHHS's initial petition for jurisdiction over the children under MCL 712A.2(b)(1) and (2) because the children were in a safe and stable environment with their mother. *Id*. at ___; slip op at 2. DHHS filed a second petition, which the trial court also denied, finding that the respondent-father's " 'continued incarceration with no foreseeable release' was significant and explained that his incarceration was 'an insurmountable barrier that eliminates any potential risk of harm to the minor children at this time.' " *Id*. at ___; slip op at 2.

This Court affirmed the trial court's decision. *Id*. at ___; slip op at 1. This Court found that the petition failed to allege sufficient facts to demonstrate that JSL and AL faced a substantial risk of harm to their mental well-being. *Id*. at ___; slip op at 4. This Court reasoned that, for the trial court to authorize the petition, DHHS was required to establish that one or more of the allegations in the petition were true and supported a statutory ground for jurisdiction under MCL 712A.2b(1). *Id*. at ___; slip op at 3. Although the petition detailed the respondent-father's alleged abuse of JSL and JSL's injuries, the petition did not include any factual allegations that, when the petition was filed, either child was subject to a "substantial risk of harm to his or her mental well-being." *Id*. at ___; slip op at 4; MCL 712A.2b(1). No additional evidence regarding the children's well-being was submitted at the hearing. *Leach*, ___ Mich App at ___; slip op at 4. This Court stated that "[w]hile it is certainly possible that respondent-father's charged conduct poses a substantial risk of harm to the children's mental health, it is not our role to speculate." *Id*. at ___; slip op at 5. Accordingly, this Court affirmed the trial court's decision not to authorize the petition because there were no allegations about existing mental or emotional harm, or a substantial risk of harm. *Id*. at ___; slip op at 5.

As in *In re Leach*, the petition in this case did not contain any allegations of harm to AT's or RT's mental well-being, and no evidence regarding AT's or RT's mental well-being was presented at trial. All of the allegations in the petition concerned respondent's and Houpt's treatment of SH, and evidence was presented at the trial regarding the effects of respondent's actions on SH, but there was no such evidence regarding AT or RT. Considering this Court's recent holding in *In re Leach*, the trial court erred by finding that jurisdiction was established under MCL 712A.2(b)(1).

With regard to MCL 712A.2(b)(2), however, this case is distinguishable from *In re Leach*. Initially, although respondent asserts that he could not have been a risk of harm to the children because he was incarcerated at the time the petition was filed, the record discloses that the petition was originally filed on January 28, 2021, and respondent was not arrested and charged until January 30, 2021. This Court has held that because the statute "speaks in the present tense, . . . the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). Further, in *In re Leach*, ___ Mich App at ___; slip op at 2, 4 n 3, this Court noted that it was undisputed that the children resided with their mother, who had sole legal and physical custody of the children, and her home was safe. The *Leach* Court also observed that there were no allegations that the mother's home was an " 'unfit place' " for JSL and AL to reside. *Id*. at ___; slip op at 3 n 2. In contrast to *In re Leach*, the petition in this case contained allegations that Houpt's home was unsafe, that Houpt committed domestic violence against respondent, and that the children were being left alone without adult supervision. There was ample evidence presented at trial to support these allegations. Respondent and another witness testified that they observed Houpt strike SH. Respondent testified that SH frequently missed school because she was the main caretaker for her younger siblings. SH testified that she did not feel safe in the home because of respondent's sexual abuse, and because of people who came in and out of their home and the family's lifestyle.

Although Houpt was not named in the petition, and the children remained in her care, there were allegations and evidence that respondent's criminality, which resulted in his incarceration, left the young children in a home environment where they were exposed to domestic violence, a lack of adult supervision, and a lifestyle that jeopardized their safety. Moreover, although SH was

not respondent's child, she was AT and RT's half-sister and respondent testified that SH was the main caretaker for his children. The evidence showed that respondent's criminality affected SH's mental well-being, given her then-recent hospitalization for suicidal ideation, and her instability in turn affected the fitness of AT and RT's home environment in light of the evidence that SH was frequently left to care for AT and RT. A preponderance of the evidence demonstrated that AT and RT were living in a dysfunctional home and that respondent's criminality contributed to that dysfunctional environment and made the home an unfit place to live. Accordingly, the trial court did not clearly err by finding that AT and RT's home environment, because of respondent's criminality and depravity, was not a fit place for them to live, thereby supporting jurisdiction under MCL 712A.2(b)(2)

## II. FAILURE TO PROVIDE REUNIFICATION SERVICES

Respondent argues that the trial court's order terminating his parental rights must be reversed because petitioner never made reasonable efforts to reunify him with his children. We disagree.

A trial court's factual findings regarding the reasonableness of reunification services, including whether aggravated circumstances exist to excuse reunification services, are reviewed for clear error. *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022); *In re Fried*, 266 Mich App 535, 541-543; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Atchley*, 341 Mich at 338 (quotation marks and citation omitted). A trial court's interpretation and application of the underlying statutes is reviewed de novo. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).

Generally, petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). However, petitioner does not have an affirmative duty to make reasonable efforts toward reunification if there is a judicial determination that aggravating circumstances as provided in MCL 722.638(1) or (2) exist. *In re Moss*, 301 Mich App 76, 90-91; 836 NW2d 182 (2013); MCL 712A.19a(2)(a). The aggravating circumstances identified in MCL 722.638(1)(a)(*ii*) are where a parent has abused a child or a sibling of the child and the abuse included criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

In this case, the trial court expressly found that

> termination [of respondent's parental rights] at the initial dispositional hearing is appropriate as aggravated circumstances exist. [SH] is a half-sibling to both children and was sexually abused by [respondent] in the family home, at times while [AT and RT] were present. [SH] provided credible testimony during the jurisdiction trial regarding at least seven separate and distinct incidents of sexual abuse by [respondent].

Although respondent argues that the initial petition did not state that there were aggravated circumstances to excuse petitioner from providing reunification services, the petition did include a request for termination of respondent's parental rights, which is required to terminate parental

rights at the initial dispositional hearing, see MCR 3.977(E)(1), and it also contained allegations that qualify as aggravated circumstances under MCL 722.638(1). Moreover, MCL 712A.19a(2)(a) only requires that there be a "judicial determination" that aggravated circumstances exist, which occurred in this case. Accordingly, because the trial court made a judicial determination that an aggravated circumstance as provided in MCL 722.638(1) existed, petitioner was not required to make reasonable efforts to reunite respondent with his children.

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by finding that clear and convincing evidence supported the cited statutory grounds for termination. We disagree.

To terminate parental rights, the trial court must find that at least one statutory ground under MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Moss*, 301 Mich App at 80. This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court found that clear and convincing evidence supported termination of respondent's parental rights under the following statutory grounds:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

> * * *

-6-

> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.
>
> \* \* \*
>
> (*ix*) Sexual abuse as that term is defined in section 2 of the child protection law, 1975 PA 238, MCL 722.622.  [MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*), (k)(*ix*).]

With regard to MCL 712A.19b(3)(b)(*i*), (k)(*ii*), and (k)(*ix*), SH, a sibling of AT and RT, testified that respondent penetrated her vagina, mouth, and anus with his penis, and that he also penetrated her vagina with his fingers on multiple occasions over several years.  The trial court found that "[SH] provided credible testimony . . . regarding at least seven separate and distinct incidents of sexual abuse by [respondent]."  The court also found that the level of detail that SH provided during her testimony enhanced her credibility.  The court further found that respondent's testimony that SH fabricated the allegations at Houpt's request was not compelling.

SH testified that, beginning when she was seven years old, respondent first began touching her on the outside and inside of her pants around her vaginal area, but without penetration. Respondent's conduct progressed to penetrating SH's vagina with his fingers, and ultimately penetrating her mouth, vagina, and anus with his penis.  SH testified that she cried and asked respondent to stop during these incidents, but respondent ignored her cries and pleas to stop.  SH recounted times when ZB, AT, and RT were in the home when the abuse occurred, and other instances when she could not remember if the other children were home.  SH remembered that every instance of abuse occurred after Houpt had left the home.

The trial court found that SH's testimony was credible and provided clear and convincing evidence to support the statutory grounds for termination.  "MCR 2.613(C) requires that in applying the principle that findings of fact may not be set aside unless clearly erroneous, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."  *In re Miller*, 433 Mich at 337.  In the instant case, the trial court was able to observe SH's and respondent's demeanors while testifying, but it also found that the level of detail in SH's testimony enhanced its credibility.  We will not disturb the trial court's credibility determination.

Although respondent argues that there was no evidence that he had harmed his own children, AT and RT, "[t]he doctrine of anticipatory neglect provides that how a parent treats one child is probative of how that parent may treat other children."  *In re Mota*, 334 Mich App at 323. Moreover, while a parent's criminal status alone is not a sufficient basis for termination, a parent's sexual assault against a child in his care can be directly related to the mental well-being of his other children and his ability to care for them.  *In re Ramsey*, 229 Mich App 310, 316; 581 NW2d 291 (1988).  Respondent also suggests that because he was never evaluated, there was not clear and convincing evidence that he would be a risk to his children in the future.  But considering the severity of the abuse and the span of years the abuse took place, respondent's continued presence in his children's lives posed a reasonable likelihood of harm to the children in the foreseeable future.  Respondent also contends that his children were not subject to a reasonable likelihood of harm because of their current placement with their mother, because his alleged conduct had not

occurred in years, and because he was under a no-contact order. However, those circumstances did not eliminate the substantial threat of harm to the children's mental and physical well-being posed by his conduct. See *id*.

Accordingly, the trial court did not clearly err by terminating respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (k)(*ii*), and (k)(*ix*). Because only one statutory ground for termination of parental rights need be established, *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009), it is unnecessary to address the remaining statutory grounds for termination.

## IV. BEST INTERESTS

Lastly, respondent argues that the trial court erred by finding that termination of his parental rights was in the children's best interests.

Once a statutory ground for termination has been established by clear and convincing evidence, the trial court must find that termination of parental rights is in the child's best interests before it can terminate parental rights. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5); MCR 3.977(E)(4). Whether termination is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App at 90. A trial court's decision regarding the best interests of a child is also reviewed for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

The trial court must weigh all of the available evidence to determine the children's best interests. *Id*.

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*Id*. at 713-714 (quotation marks and citations omitted).]

"[A] child's placement with relatives is a factor that the trial court is required to consider when making its best-interests determination, and a child's placement with relatives weighs against termination." *In re Mota*, 334 Mich App at 321 (quotation marks and citations omitted). In its January 9, 2023 opinion, the trial court expressly referred to this principle, but concluded that it was not applicable because Houpt was the children's mother and a parent does not fall within the definition of a relative under MCL 712A.13a(1)(j). The trial court was relying on a former version of MCL 712A.13a(1)(j)(*i*), which listed various types of relationships within the definition of a relative, but did not include a "mother" or a parent. See *In re Schadler*, 315 Mich App 406, 412-413; 890 NW2d 676 (2016). However, MCL 712A.13a(1)(j)(*i*) was amended by 2022 PA 200, effective October 7, 2022, to provide that a "relative" is any "individual who is at least 18 years of age and is . . .[r]elated to the child within the fifth degree by blood, marriage, or adoption." This definition includes Houpt, the mother of the children, with whom the children reside.

-8-

While we are not persuaded that the trial court otherwise erred in its analysis of the children's best interests, "[a] trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App at 43. Because the trial court failed to consider that the children's placement with Houpt was a factor weighing against termination, we vacate the trial court's best-interest determination and remand for further consideration of the children's best interests considering their placement with Houpt.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

# Court of Appeals, State of Michigan

# ORDER

In re Truax Minors

Docket No.  363835; 364747

LC No.  2021-016233-NA

Noah P. Hood
Presiding Judge

Kathleen Jansen

Kathleen A. Feeney
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 56 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we vacate the trial court's best-interest determination and remand for further consideration of the children's best interests considering their placement with Houpt. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

November 21, 2023
Date

_____
Chief Clerk